**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CRS AUTO PARTS, INC. | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NATIONAL GRANGE MUTUAL | : | NO.  08-2022 |
| INSURANCE COMPANY | : | |
| | : | |
| Defendant, | : | |
| | : | |
| TURLEY INSURANCE AGENCY, INC., | : | |
| | : | |
| Third-Party Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                                    February 2, 2009

Currently pending before the Court is a Motion for Partial Summary Judgment filed by

Defendant National Grange Mutual Insurance Company ("National Grange") and the Response of

Plaintiff CRS Auto Parts, Inc. ("CRS").  For the following reasons, the Court grants the Motion.

**I.      FACTUAL AND PROCEDURAL HISTORY**

**A.      Factual Background**

Defendant National Grange is a business entity insurer.  (Compl. ¶ 2.)  On March 19, 2001,

National Grange entered into an Agency Agreement with Turley Insurance Agency, Inc. ("Turley")

authorizing Turley to solicit insurance contracts, issue insurance binders, and collect premiums, all

on behalf of National Grange.  (Def.'s Mot. Summ J., Ex. 9(B) ("Third Party Compl."), ¶ I.)  Under

the Agency Agreement, Turley was prohibited from appointing any sub-agent or submitting

business from any other producers without the knowledge of National Grange.  (Id. ¶ XII(e).)  In

addition, Turley agreed to reimburse and hold National Grange harmless for "any loss, expense or damage sustained by reason of any violation of the provisions of this Agreement . . ."  (Id. ¶ XI (b).)

In May or June 2003, Plaintiff contacted Russell Schaible of Caln Insurance Agency regarding its efforts to obtain commercial insurance coverage.  (Compl. ¶ 9.)  Upon obtaining policy information, vehicle lists, drivers lists, and lost run documents, Schaible referred Plaintiff to John Turley III of the Turley Insurance Agency.  (Id. ¶¶ 12-13.)  All of the accurate loss information needed by Defendant to do the proper policy underwriting was provided to Turley prior to June 30, 2003.  (Id. ¶ 14); see also  Nat'l Grange Mut. Ins. v. CRS Auto Parts, Inc., Civ. A. No. 06-3174, 2007 WL 4078728, at *1 (E.D. Pa. Nov. 16, 2007).

On June 30, 2003, Turley issued an insurance binder, purportedly on National Grange's behalf, to include, in part, worker's compensation and commercial auto liability coverage for CRS. (Compl ¶ 16.)  Prior to issuing that binder, Turley was not advised that he lacked the authority to bind National Grange.  In fact, on prior occasions, he had issued binders for National Grange. (Compl. ¶ 19; Nat'l Grange, 2007 WL 4078728, at *1.  Moreover, the Agency Agreement granted Turley the authority to bind National Grange to insurance coverage.  (Compl. ¶ 18); Nat'l Grange, 2007 WL 4078728, at *1.

On July 10, 2003, Christopher DiPietro and Richard Tilley, were involved in an automobile accident during the course of their employment with CRS.  (Compl. ¶ 18; Def.'s Mot. Summ. J., Ex. 12, 8.)  As a result of the accident, Mr. Tilley was killed and Mr. DiPietro was injured.  (Id.) Plaintiff CRS timely contacted Turley and/or Defendant, on July 11, 2003, to inform it of the accident and advise that there would be workers' compensation claims.  (Compl. ¶ 21; Def.'s Mot. Summ. J., Ex. 12.)  Pending its investigation of the alleged worker's compensation insurance

coverage, National Grange issued Notices of Temporary Compensation to DiPietro and the Tilley Estate.  (Def.'s Mot. Summ. J.,  Ex. 13.)  On August 26, 2003, however, National Grange, believing that it had not issued policies of insurance to CRS, sent Notices of Worker's Compensation Denials and Notices Stopping Temporary Compensation to DiPietro and the Tilley Estate.  (Id. Ex. 14.)  In these Notices, National Grange informed both DiPietro and the Tilley Estate that, "IF YOU BELIEVE YOU SUFFERED A WORK-RELATED INJURY, YOU WILL BE REQUIRED TO FILE A CLAIM PETITION WITH THE BUREAU OF WORKERS' COMPENSATION IN ORDER TO PROTECT YOUR FUTURE RIGHTS."  (Id.)  Via a Rescinder Letter of the same date, National Grange informed CRS, in part, as follows:

> The Turley Insurance Agency did not have the authority to bind any insurance on behalf as the business was brokered. . . .
>
> * * *
> A review of the applications supporting material and additional investigative findings reveals that the applications were signed on a date well after the requested effective date indicated on the application and one day after the date of loss.  You have acknowledged that you signed all of the applications on July 11, 2003.
>
> Regarding the application for Automobile Insurance you provided inaccurate and incomplete information of previous losses.  We have verified over $65,000 in automobile claims that were not disclosed on your signed application.  Your signed application also stated that CRS Auto Parts, Inc. had not had any policy declined, cancelled or non-renewed during the last 3 years.  This was not true as your prior insurance carrier, Meridian, had notified you that they were non-renewing your Automobile policy.  We consider the above inaccuracies to be material misrepresentations.
>
> For the reasons stated above, we hereby rescind any insurance coverage intended to be put in force by your applications, including any binders that may have been issued to you or on your behalf.

(Id. Ex. 15.)  National Grange promptly returned CRS's deposit premium of $11,454.00.  (Id.)

**B.**     **The Initial State Court Action**

On July 11, 2005, CRS, along with its parent company, KSI Trading, filed an action against (1) Albert R. Schaible, Jr., Russell Schaible, and Caln Insurance Agency (collectively, the "Caln Defendants"), and (2) National Grange in the Montgomery County, Pennsylvania Court of Common Pleas ("the State Court Action").  In their Amended Complaint, filed July 1, 2006, CRS and KSI sought damages resulting from the Caln Defendants' failure to obtain insurance coverage from National Grange on CRS's behalf and from National Grange's alleged failure to honor its obligations under the purported policy of workers' compensation insurance.  (Def.'s Mot. Summ. J., Ex. 1, Am. Compl., CRS Auto Parts, et al. v. Nat'l Grange Mut. Ins. Co., et al., No. 05-18198, ¶¶ 6-35 (Phila. C.P. Apr. 3, 2006) ("the State Court Complaint").)  That failure purportedly exposed CRS to workers' compensation and general liability claims by Christopher DiPietro and the Estate of Richard Tilley.[1]  (Id.)

The Caln Defendants filed preliminary objections to Plaintiffs' Amended State Court Complaint on March 11, 2008.  (Def.'s Mot. Summ. J. ¶ 5.).  In addition, they filed a joinder complaint against Turley, on May 23, 2006, claiming that Turley's conduct in assisting in the completion of CRS's application was a direct cause of National Grange's denial of coverage.  Id. The state court sustained the preliminary objections and, in turn, dismissed the Caln Defendants' third-party claims against Turley.  (Id. Ex. 2.)  On February 29, 2008, National Grange filed its

---

[1] Originally, DiPietro and the Tilley Estate filed claim petitions with the Bureau of Worker's Compensation.  (Def.'s Mot. Summ. J. ¶ 29.)  Following the filing of the State Court Action, however, DiPietro and the Tilley Estate, acting pursuant to their rights under the Pennsylvania Workers' Compensation Act, 77 P.S. § 305(d), asserted third-party claims against multiple defendants including CRS.  (Id. ¶¶ 30-31.)  Those third-party claims were settled, with CRS contributing to the settlements.  (Id. ¶ 31.)  In turn, both claim petitions with the Bureau of Worker's Compensation were withdrawn.  (Id. ¶ 29.)

4

answer and new matter in state court and, concurrently, filed a joinder complaint against Turley, to which Turley filed preliminary objections.  (Id. ¶ 5.)

### C.    The Declaratory Judgment Action

National Grange filed a Declaratory Judgment Action against CRS in federal court (the "Declaratory Judgment Action") on July 19, 2006.  (Id. Ex. 3.)  In that action, National Grange sought a finding (1) that the workers' compensation insurance policy purportedly issued by National Grange to CRS was not in effect at the time of the motor vehicle accident injuring DiPietro and Tilley, and (2) that National Grange was not the worker's compensation insurance carrier for CRS on the date of the motor vehicle accident and, thus, had no duty to indemnify DiPietro and Tilley for any medical benefits.  (Id., Ex. 3, at 7.)  Turley was not joined as a party to this action.  (Id.)

Following a non-jury trial on July 30, 2007, this Court issued Findings of Facts and Conclusions of Law, dated November 16, 2007.  In that opinion, the Court determined that:  (1) CRS made no misrepresentations, at any time, to either Turley or National Grange; (2) that Turley, acting as an agent of National Grange, issued binders to CRS; and (3) that the insurance binders were in effect and provided coverage to CRS at the time of the accident.  Nat'l Grange, 2007 WL 4078728,  at *1-2.  Consequently, the Court entered judgment in favor of CRS and against National Grange.  Id. at *2.  On November 28, 2007, National Grange filed a Notice of Appeal to the Third Circuit.  That appeal currently remains pending.

Counsel for both CRS and National Grange attended a federal mediation on June 2, 2008, at which time they executed a Mediation Stipulation.  In that Stipulation, CRS and KSI agreed to withdraw the State Court Action to allow the recently filed federal action to proceed.  (Def.'s Mot.

Summ. J., Ex. 6.)  Additionally, the parties entered into "a tolling agreement with respect to any statute of limitations defenses limited to claims raised in the State Court action but not to any other claims (which would have otherwise been time barred even if the case remained in State Court)." (Id.)  Accordingly, on June 6, 2008, CRS and KSI discontinued the state court action.

### D.     The Present Action

CRS initiated the current federal action against National Grange on April 28, 2008.  In its Complaint, CRS alleges claims of breach of contract, bad faith, and fraud.  (Compl. ¶¶ 25-42.)  The Complaint further asserts that the acts and/or omissions of National Grange were done with intent, malice, and gross, willful, wanton, and reckless disregard for the rights of CRS.  (Id. ¶ 39.)  By way of its Answer and Affirmative Defenses, National Grange contends, among other things, that the Complaint fails to state a claim upon which relief may be granted, that CRS's claims are barred by the applicable statute of limitations, that CRS's allegations of fraud fail for want of specificity under Federal Rule of Civil Procedure 9(b), and that CRS's fraud claims are barred by the economic loss doctrine.  (Id., Ex. 8.)

On June 27, 2008, National Grange filed a Third-party Complaint against Turley.  (Id. Ex. 9.)  Count I seeks common law indemnification on the grounds that Turley, not National Grange, engaged in fraud and/or misrepresentation during the placement of CRS's insurance policies.  (Id. ¶¶ 23-25.)  Count II asserts that Turley breached the agreement between National Grange and Turley by (a) relying on third-party information from the Caln Defendants to complete CRS's application for insurance, and (b) submitting CRS's application with multiple misrepresentations. (Id. ¶¶ 26-31.)  Finally, Count III seeks contractual indemnity pursuant to the Agency Agreement between National Grange and Turley.  (Id. ¶¶ 32-36.)

On July 25, 2008, Turley filed a Motion to Dismiss the Third-party Complaint, alleging that Counts I and II were barred by collateral estoppel and *res judicata*. Turley also contended that Count III was not ripe for judicial decision due to the pending appeal of the Court's November 16, 2007, decision in the Declaratory Judgment Action. By way of Memorandum and Order dated October 7, 2008, the Court denied this Motion. CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co., Civ. A. No. 08-2022, 2008 WL 4559563, at *9 (E.D. Pa. Oct. 8, 2008).

Defendant filed the instant Motion for Partial Summary Judgment on November 22, 2008. The Court now turns to a discussion of the arguments raised by both parties with respect to that Motion.

## II.   STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. County of Allegheny, PA, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing U.S. v.

Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d

Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept

as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his

favor."  Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue

of material fact, it need not "support its motion with affidavits or other similar materials negating

the opponent's claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden

by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."

Id. at 325.  Once the movant has carried its initial burden, the opposing party "must do more than

simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec., 475

U.S. at 586.  "There must . . . be sufficient evidence for a jury to return a verdict in favor of the

non-moving party; if the evidence is merely colorable or not significantly probative, summary

judgment should be granted."  Arbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994),

abrogated on other grounds, Showalter v. Univ. of Pitt. Med. Ctr., 190 F.3d 231 (3d Cir. 1999).

## III.   DISCUSSION

### A.    **Whether Plaintiff's Bad Faith Claim is Barred by the Statute of Limitations**

Defendant National Grange first seeks summary judgment on Plaintiff's bad faith claim.  In

its Complaint, Plaintiff alleges that "Defendant, National Grange, intentionally, willfully, wantonly

and recklessly denied the rightful insurance coverage it owed to Plaintiff, CRS, with the intention

of avoiding payment of a claim which was properly covered in an attempt to further improve its

profits."  (Compl. ¶ 31.)  The Complaint goes on to list a series of acts and omissions by National

Grange, which are purportedly representative of its violation of its duty of good faith and fair

dealing. [2] (Compl. ¶ 38.)  National Grange now asserts that because this claim was not filed

---

[2]  The Complaint lists the following actions and omissions:

a.     intentionally losing files and/or portions thereof;

b.     having a filing policy relating to storage of files which allowed for policies
        in litigation and/or otherwise to be lost;

c.     conducting interviews and investigations without producing them/it to its
        insured, its agents, servants, workers or employees;

d.     failing to honor a binder properly issued by its Authorized Agent;

e.     disregarding the binding authority of their Authorized Agent;

f.     failing to acknowledge its obligations under its Authorized Agency
        Agreement;

g.     denying that Turley was their agent;

h.     asserting that Turley was the agent of CRS;

i.     asserting that Turley was a broker;

j.     conducting inappropriate investigation(s);

k.     failing to protect and preserve evidence;

l.     failing to independently and properly analyze the facts of the instant claim
        and independently and properly apply the facts to the law;

m.     abuse of process;

n.     attempting to intimidate and/or coerce CRS economically;

o.     attempting to intimidate and/or coerce CRS with multiple threats of
        criminal prosecution;

p.     following advice of counsel, knowing said advice was improper;

q.     failing to provide a defense in the DiPietro and Tilley cases, mentioned,
        supra;

r.     failing to participate in the defense and negotiations in the DiPietro and
        Tilley, mentioned supra;

s.     requiring CRS to pay counsel fees, costs, expenses and settlement share
        out of the funds of its business;

t.     failing to resolve conflicts of interest;

u.     improper handling of and delay in deciding coverage questions;

v.     hiring agents, servants, workers or employees who had no experience or
        negligible experience in rendering legal opinions regarding coverage
        questions;

w.     hiring who had no experience or negligible experience in rendering legal
        opinions regarding coverage questions;

x.     failing to have a group of individuals within its employ who regularly
        review coverage issues;

y.     having a group of individuals within its employ who are not properly
        trained in coverage issues who regularly review coverage issues;

z.     disregarding the results the Dec. Action, supra;

aa.    failing to properly documents file activity;

bb.    failing to seek advice from a professional source regarding the coverage

within either two or four years of the denial of coverage, it is untimely and thus barred by the

statute of limitations.  Having considered the parties' well-briefed arguments, together with the

applicable jurisprudence, the Court grants judgment on this claim in favor of Defendant.

---

issues in this case;

cc.   placing opinions in the file which prove that it is gambling with the insured's funds

dd.   providing erroneous information for legal activities;

ee.   making decisions inconsistent with each other and the facts;

ff.   failure to consider the claims of CRS upon their merits;

gg.   failing to resolve doubt in favor of CRS;

hh.   Disregarding the clear intent of the law;

ii.   Defrauding CRS of coverage;

jj.   Intractably refusing to settle the Dec. Action, supra., after the liability relating to said claims was established at trial;

kk.   Failing to inform counsel for CRS of all the facts;

ll.   Losing material evidence;

mm.   Engaging in a calculated scheme in an attempt to defeat the claims of CRS by concealing information and/or the facts;

nn.   Taking an unreasonable position on the validity of defense of coverage;

oo.   Tampering of evidence;

pp.   Arbitrary denial of coverage;

qq.   Failing to give prompt and appropriate notice of a coverage question(s) to CRS;

rr.   Failing to discuss coverage issues with their Authorized Agent;

ss.   Failing to adopt policies and procedures relating to coverage issues;

tt.   Adopting inadequate policies and procedures relating to coverage issues;

uu.   Failing to adopt policies and procedures relating to investigations;

vv.   Adopting inadequate policies and procedures relating to investigations;

ww.   Attempting to blackmail CRS into discontinuing its claims for coverage;

xx.   Misrepresenting facts to the court during the trial of the said Declaratory Judgment Action;

yy.   Attempting to force litigation of a state court action filed by CRS knowing that the said action was a saving action and knowing that the parties had agreed that the Defendant, had agreed to forgo any and all proceeding in the said state action until the said Declaratory Judgment Action was totally resolved;

zz.   Attempting to require CRS to undergo unnecessary expenses in the said state court action in an effort to place economic pressure onto CRS to discontinue the said state action.

(Compl. ¶ 38(a)-(zz).)

### 1.        The Applicable Statute of Limitations

In resolving the timeliness issue, the Court must first determine the applicable statute of limitations and accrual date for a bad faith claim under state law.  Pennsylvania law provides for two types of "bad faith" claims by an insured against an insurer.  McPeek v. Travelers Cas. and Sur. Co. of Am., Civ. A. No. 06-114, 2007 WL 1875801, at *2 (W.D. Pa. Jun. 27, 2007) (citing The Birth Center v. St. Paul Co., 787 A.2d 376 (Pa. 2001) (Nigro, J., concurring)).  The first consists of a statutory bad faith tort claim under 42 Pa.C.S. § 8371,[3] pursuant to which the insured may recover only the damages set forth in the statute, including punitives, attorney fees, court costs, and interest. Id.  The second involves a contract claim for breach of the implied contractual duty to act in good faith, which is separate and distinct from the statutory bad faith claim.  Haugh v. Allstate Ins. Co., 322 F.3d 227, 236 (3d Cir. 2003) (citing Birth Center, 787 A.2d at 386); McPeek, 2007 WL 1875801, at *2.  Pursuant to this latter claim, an insured can recover traditional contract damages, including compensatory damages.  Kakule v. Progressive Cas. Ins., Civ. A. No. 06-4995, 2007 WL 1810667, at *4 (E.D. Pa. Jun. 20, 2007).  Notably, no common law tort remedy exists for bad faith by an insurer.  Id. at  *3; Meyer v. Cuna Mut. Group, Civ. A. No. 03-602, 2007 WL 2907276, at *14 (W.D. Pa. Sep. 28, 2007).

---

[3]  The statute provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 PA. CONS. STAT. § 8371.

Prior to 2004, Pennsylvania courts applied various statutes of limitations ranging from two to six years for bad faith claims.  Finally, in <u>Ash v. Cont'l Ins. Co.</u>, 861 A.2d 979 (Pa. Super. 2004), the Pennsylvania Superior Court concluded that bad faith claims brought under 42 Pa.C.S. § 8371 are statutorily created tort actions subject to a two-year statute of limitations.  <u>Id.</u> at 984.  On appeal, the Pennsylvania Supreme Court affirmed the Superior Court's determination of a two year limitations period for actions under section 8371, holding that "the duty under section 8371 is one imposed by law as a matter of social policy, rather than one imposed by mutual consensus, and an action to recover damages for a breach of that duty derives primarily from the law of torts."  <u>Ash v. Cont'l Ins. Co.</u>, 932 A.2d 877, 885 (Pa. 2007).

The statute of limitations for a common law cause of action for breach of the duty to act in good faith presents a somewhat different analysis, as the Pennsylvania Supreme Court has not expressly addressed this issue.  In <u>The Birth Center v. St. Paul Cos., Inc.</u>, 787 A.2d 376 (Pa. 2001), the Pennsylvania Supreme Court acknowledged the distinction between a statutory bad faith claim under section 8371 and a common law bad faith claim, noting that "where an insurer acts in bad faith . . . it breaches its *contractual* duty to act in good faith and its fiduciary duty to the insured."  <u>Id.</u> at 379 (emphasis added); <u>see also</u> <u>Ash</u>, 932 A.2d at 884 (reaffirming that an action under section 8371 "is distinct from the common law cause of action for breach of the contractual duty of good faith.").  Thereafter, in <u>Haugh v. Allstate Ins. Co.</u>, 322 F.3d 227 (3d Cir. 2003), the Third Circuit, analyzing the appropriate limitations for such a claim, remarked that because a common law bad faith claim sounds in contract, it is subject to the four year statute of limitations for contract actions, per 42 Pa.C.S. § 5525.  <u>Id.</u> at 237.  As no Pennsylvania court has since deemed <u>Haugh</u> incorrect, this Court is bound by its holding.

Given the two year statute of limitations for a bad faith claim under section 8371 and the four year statute of limitations for a common law bad faith claim sounding in contract, the Court must next ascertain the accrual date for each of these limitations periods.  In Adamski v. Allstate Ins. Co., 738 A.2d 1033 (Pa. Super. 1999), the plaintiff raised a bad faith claim against the insurer on the basis of alleged separate and distinct acts of bad faith, including refusal to defend or indemnify, denial of liability protection without first seeking declaratory judgment, failure to settle, lack of adequate basis for denying protection, and failure to conduct a diligent investigation.  Id. at 1038.  The Pennsylvania Supreme Court remarked that "a claim accrues when a plaintiff is harmed and not when the precise amount or extent of damages is determined."  Id. at 1042.  "For purposes of applying Section 8371, one must look to the date on which the defendant insurance company first denied the insured's claim in bad faith."  Id. at 1040.  The court went on to reason that continuing denials of coverage after the initial denial of coverage do not give rise to separate acts of bad faith.  Id. at 1040.  To that end, an insured "may not separate initial and continuing refusals to provide coverage into distinct acts of bad faith."  Id. at 1042.  Thus, where an insurer clearly and unequivocally puts an insured on notice that he or she will not be covered under a particular policy for a particular occurrence, the statute of limitations begins to run and the insured cannot avoid the limitations period by asserting that a continuing refusal to cover was a separate act of bad faith.  Id. at 1042-43.

Thereafter, in Sikirica v. Nationwide Ins. Co., 416 F.3d 214 (3d Cir. 2005), the Third Circuit, relying on Adamski, predicted that the Pennsylvania Supreme Court would find that a statute of limitations begins to run when a cause of action arises or accrues, which, in the case of a bad faith claim, is when coverage is denied.  Id. at 224-25.  In that matter, the defendant insurer

13

notified the plaintiff insured, by way of letter dated February 22, 1991, of its refusal to defend or indemnify plaintiff against a class action complaint.  Id. at 217.  After judgment was entered against plaintiff in the class action, plaintiff sued defendant for breach of contract and bad faith.  Id. at 218-19.  The district court deemed the bad faith claim barred by the statute of limitations and plaintiff appealed, arguing that "the refusal to defend and the refusal to indemnify [were] two independent events in determining the accrual of the statute of limitations in a statutory bad faith claim."  Id. at 219, 224.  Specifically, it asserted that the statute of limitations in an action seeking the cost of the defense accrues only when the defense has been completed, and the bad faith claim for refusal to indemnify accrues when the judgment in the underlying action is final.  Id.  The Third Circuit rejected this argument and found that, "[a] bad faith claim arises upon a 'frivolous or unfounded refusal to pay proceeds of policy.'"  Id. at 225 (quoting Adamski, 738 A.2d at 1036).  Because defendant's February 1991 letter of denial unambiguously informed plaintiff of its refusal to defend, indemnify, or protect it against the class action allegations of the complaint, the statute of limitations began running as of that date, thereby foreclosing the lawsuit filed more than eleven years later.  Id.[4]

In this case, Plaintiff's Complaint does not specify whether the bad faith claim is premised on statutory bad faith or on common law contract.  Under either theory, however, Plaintiff's bad

---

[4]  See also Campbell v. State Farm Mut. Auto. Ins. Co., Civ. A. No. 06-871, 2008 WL 939193, at *4 (W.D. Pa. Apr. 4, 2008) (holding that the statute of limitations on a bad faith claim began to run when the insurer denied the insured coverage by letter); Nat'l Recovery Agency, Inc. v. AIG Domestic Claims, Inc., Civ. A. No. 05-033, 2006 WL 1289545, at *7 (M.D. Pa. May 9, 2006) (finding the statute of limitations on a statutory bad faith claim to accrue on the date the insurer provided clear notice by letter that it would neither defend nor indemnify the plaintiff in a lawsuit); Baer v. Harford Mut. Ins. Co., Civ. A. No. 05-1346, 2005 WL 3054354, at *3 (E.D. Pa. Nov. 14, 2005) ("[A] plaintiff's misunderstanding as to when the statute accrues does not toll the running of the statute.") (citing Nesbitt v. Erie Coach Co., 204 A.2d 473, 475 (Pa. 1964)).

faith claim is, on its face, time barred.  Defendant unequivocally gave notice of its denial of

coverage on August 26, 2003.  Under well-established jurisprudence, the bad faith claim accrued on

that date.  While Plaintiff alleges several continuing denials of coverage, such as failure to

adequately investigate and failure to acknowledge the authority of its agent, these acts relate back to

the initial denial and do not give rise to separate counts of bad faith.  Ultimately, Plaintiff did not

file its federal court action first setting forth its bad faith claim until April 28, 2008, more than four

and a half years after the accrual date.  As such, regardless of whether the Court applies the two or

four year limitations period, Plaintiff's bad faith claim is facially time barred.

In light of this deficiency, Plaintiff offers the Court several alternative bases on which to

find its bad faith claim timely.  First, it contends that the discovery rule applies, permitting

consideration of when it actually discovered the bad faith.  Second, it asserts that the State Court

Complaint sets forth sufficient allegations to put Defendant on notice of both its statutory bad faith

claim and its common law bad faith claim.  Finally, it claims that the federal Complaint alleges

separate acts of bad faith that are ongoing in nature, including actions throughout the litigation of

the federal Declaratory Judgment Action and the instant action, for which the statute of limitations

has not yet expired.  The Court addresses each argument in turn.

### 2.     Whether the Discovery Rule Applies to Save Plaintiff's Bad Faith Claim

Plaintiff first invokes the discovery rule to argue, in cursory fashion, that its cause of action

arose at some unspecified date after the denial of appeal.  As noted above, the general rule provides

that the statute of limitations begins to run as soon as "a right to institute and maintain suit arises."

Sikirica, 416 F.3d at 224-25.  Nonetheless, Pennsylvania law recognizes that "in some

circumstances, although the right to institute suit may arise, a party may not, despite the exercise of

diligence, reasonably discover that he has been injured." Crouse v. Cyclops Indus., 745 A.2d 606, 611 (Pa. 2000).  In these cases, the discovery rule applies.  Id.  "The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably knows that he has been injured and that this injury has been the cause of another party's conduct."  Id.  A court presented with an assertion that the discovery rule is applicable, "must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause."  Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005).  While this question is normally an issue for the jury, where reasonable minds could not differ in finding that a party knew of or should have known, by the exercise of reasonable diligence, of his injury and its cause, the court may determine that the discovery rule does not apply as a matter of law.  Id. at 458-59; see Sakol v. Nationwide Mut. Ins. Co, Civ. A. No. 06-735, 2007 WL 1811215, at *5 (M.D. Pa. Jun. 21, 2007) (declining to apply discovery rule where plaintiff insured argued that the defendant insurer presented false information to insured about his policy, leading him to believe that he was not eligible for benefits and obscuring bad faith actions; the court found that bad faith claim accrued upon denial of coverage).

The Court finds no factual basis supporting application of the discovery rule.  Plaintiff admits, and the evidence establishes, that Defendant clearly and unequivocally denied coverage by way of a letter dated August 26, 2003.  (Def.'s Mot. Summ. J., Ex. 15.)  Following a full explanation as to why it believed no policy was in effect for CRS, Defendant stated,

> [W]e hereby rescind any insurance coverage intended to be put in force by your applications, including any binders that may have been issued to you or on your behalf.  You should be aware that there is no insurance coverage for you, or anyone else, arising out of the accident on July 10, 2003, or any other benefits. . . . *Please accept this as full and final declination of coverage*.

(Id. (emphasis added).)  As of the date of this letter, Plaintiff had unequivocal notice that it was injured as a result of Defendant's purportedly bad faith failure to provide insurance benefits.[5] Plaintiff presents no facts to suggest that it was unaware of its injury until a later date.  Accordingly, Plaintiff derives no benefit from the discovery rule.

### 3.    Whether CRS Timely Filed Its Bad Faith Claim Via Its State Court Complaint

Plaintiff next argues that its State Court Complaint, filed on July 11, 2005, alleged sufficient facts to give rise to a bad faith claim under both section 8371 and common law.  When Plaintiff later withdrew the State Court Action, pursuant to the Mediation Stipulation, the parties entered into "a tolling agreement with respect to any statute of limitations defenses limited to claims raised in the State Court action but not to any other claims (which would have otherwise been time barred even if the case remained in State Court)."  (Def.'s Mot. Summ. J., Ex. 6.)  In light of this agreement, Plaintiff contends that the statute of limitations on its bad faith claim was tolled and the claim must be deemed timely.

This argument compels an inquiry into whether Plaintiff pled all the elements of a bad faith claim pursuant to the applicable state pleading rules.[6]  Under Pennsylvania Rule of Civil Procedure

---

[5]  Indeed, in a separate part of its Opposition Memorandum, Plaintiff actually argues that it raised its bad faith claim in its June 2005 State Court Complaint, thereby undermining any claim that it did not discover the bad faith acts until after the statute of limitations had run.  (Pl's Opp. Mot. Summ. J. 15-18.)

[6]  In its Sur-reply Brief, Plaintiff argues that the Federal Rules of Civil Procedure must be used to determine what claims were actually asserted and preserved in the State Court Action. Plaintiff reasons that the Mediation Agreement, which indicated that statute of limitations defenses were waived as to the claims raised in the State Court Complaint, "was discussed and signed at a *Federal* mediation and as a result of the agreement, and the state court action was being dismissed in furtherance of the *Federal* action."  (Pl.'s Reply Br. 2.)

While Plaintiff is correct that the mediation was under the auspices of the federal court and provided for the dismissal of the state court action, to permit the parties to litigate the federal

1020(a), "[e]ach cause of action and any special damage related thereto shall be stated in a separate count containing a demand for relief." Pa. R. Civ. P. 1020(a).  Rule 1020(d) goes on to state that:

> If a transaction or occurrence gives rise to more than one cause of action heretofore asserted in assumpsit and trespass, against the same person, including causes of action in the alternative, they shall be joined in separate counts in the action against any such person. Failure to join a cause of action as required by this subdivision shall be deemed a waiver of that cause of action as against all parties to the action.

Pa. R. Civ. P. 1020(d).  Given these requirements, the Court must now determine whether the State Court Complaint was sufficient to raise either or both a statutory bad faith claim under section 8371 and a contractual bad faith claim under common law.

### a.   Statutory Bad Faith Claim

Section 8371 does not define "bad faith."  In the context of insurance litigation, however, Pennsylvania courts have universally accepted the following definition:

> 'Bad faith' on the part of the insurer is any frivolous or unfounded refusal to pay proceeds of policy; it is not necessary that such refusal be fraudulent.  For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; *mere negligence or bad judgment is not bad faith*.

Adamski, 738 A.2d at 1036 (quoting Black's Law Dictionary 139 (9th ed. 1990)) (emphasis added).  Thus, to establish bad faith under the statute, the Superior Court has set forth a two-part test, both parts of which must be established by clear and convincing evidence:  "(1) the insurer

---

Declaratory Judgment Act, Plaintiff's interpretation of the Mediation Agreement is flawed.  The Agreement stated that "[w]e will enter into a tolling agreement with respect to any statute of limitations defenses *limited to claims raised in the State Court action but not to any other claims (which would have otherwise been time barred even if the case remained in State Court)*." (Def.'s Mot. Summ. J. Ex. 6 (emphasis added).)  A plain reading of this language suggests that, for purposes of the tolling provision, Pennsylvania law must apply to determine what state law claims were raised by a complaint filed in state court pursuant to the Pennsylvania Rules of Civil Procedure.  The simple fact that the Mediation Agreement was federal in nature does not alter the law under which the complaint was originally filed.

lacked a reasonable basis for denying coverage; and (2) the insurer knew or recklessly disregarded its lack of a reasonable basis." Id. (citing Terletsky v. Prudential Prop. and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994); see also Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005); WV Realty, Inc. v. N. Ins. Co., 334 F.3d 306, 312 (3d Cir. 2003). Under Pennsylvania law, the presence or absence of bad faith does not turn on the legal correctness of the basis for an insurer's denial of an insured's claim. Jung v. Nationwide Mut. Fire Ins. Co., 949 F. Supp. 353, 359-60 n.7 (E.D. Pa. 1997). "If it did, the need for an independent analysis of an insured's bad faith claim would disappear, as the applicable section 8371 claim would turn specifically on the underlying coverage determination." Employers Mut. Cas. Co. v. Loos, 476 F. Supp. 2d 478, 496 (W.D. Pa. 2007).

The State Court Complaint in this case set forth three counts, none of which either explicitly or implicitly referenced section 8371. Count I alleged that National Grange acted negligently in denying coverage – a claim that, under plain jurisprudence, is insufficient to show bad faith. Count II asserted that National Grange breached its contract by denying coverage – an allegation completely inconsistent with a statute sounding in tort. Finally, Count III claims fraud based on Turley's actions, but does not suggest either that National Grange lacked a reasonable basis for denying coverage or that it knew or recklessly disregarded its lack of a reasonable basis. Quite to the contrary, it acknowledges that National Grange denied coverage because of a belief that Turley was not its agent and that Turley failed to comply with numerous National Grange policies. (Def. Mot. Summ. J., Ex. 1, ¶¶ 50-64.) The legal correctness of National Grange's position is irrelevant. Under even the most liberal notice pleading standards, such allegations are insufficient to put forth a claim for bad faith under section 8371. In turn, the Court finds that the statutory bad faith claim

was not raised, either implicitly or explicitly, by the State Court Complaint.

#### b.    Common Law Bad Faith Claim

The standard to prove a contractual bad faith claim under common law differs from that under section 8371 and, to date, has not been clearly defined by the Pennsylvania courts. "[A]n insurer assumes a fiduciary responsibility towards its insured and therefore is obligated to act in good faith and with due care when it represents the interests of the insured when dealing with third-party claims brought against the insured." Haugh v. Allstate Ins. Co., 322 F.3d 227, 237 (3d Cir. 2003) (citing The Birth Center v. St. Paul Co., Inc., 727 A.2d 1144, 1155 (Pa. 1999)). In Cowden v. Aetna Cas. and Sur. Co., 134 A.2d 223 (Pa. 1951), the Pennsylvania Supreme Court remarked that "*bad faith and bad faith alone* was the requisite to render the defendant liable." Id. at 229. Unlike statutory bad faith, however, common law bad faith may be proven showing that the insurer's conduct was unreasonable or negligent. DeWalt v. Ohio Cas. Ins. Co., 513 F. Supp. 2d 287, 296-97 (E.D. Pa. Apr. 10, 2007).

"In order to plead a cause of action for breach of the covenant of good faith, whether it is an express or implied covenant, a plaintiff must properly plead the elements of a claim of breach of contract."[7] Sheinman Provisions, Inc. v. Nat'l Deli LLC, Civ. A. No. 08-453, 2008 WL 2758029, at *3 (E.D. Pa. Jul. 15, 2008). "In other words, a plaintiff must allege facts to establish that a contract exists or existed, including its essential terms, that defendant failed to comply with the covenant of good faith and fair dealing by breaching a specific duty imposed by the contract *other*

---

[7] Defendant argues that a claim for breach of the implied covenant of good faith is not comparable to a claim for bad faith. (Def.'s Reply Br. 9.) The Pennsylvania Supreme Court has explicitly recognized, however, that "where an insurer acts in bad faith, by unreasonably refusing to settle a claim, it breaches its contractual duty to act in good faith and its fiduciary duty to its insured." Ash, 932 A.2d at 884 (quoting Birth Center, 787 A.2d 376).

*than the covenant of good faith and fair dealing,* and that resultant damages were incurred by

plaintiff." Id.  Notably, a claim for breach of a covenant of good faith and fair dealing may not be

maintained as an independent cause of action separate from the breach of contract claim.  LSI Title

Agency, Inc. v. Evaluation Servs., 951 A.2d 384, 391 (Pa. Super.), appeal denied, 960 A.2d 841

(Pa. 2008).

Again, this Court finds that the State Court Complaint failed to put National Grange on

notice of any common law bad faith claim.  The breach of contract count, under which any claims

for breach of the covenant of good faith and fair dealing would be subsumed, stated only as

follows:

> 46.   The Caln Defendants breached their agreement with CRS Auto Parts to
>        obtain coverage for them through the Turley Insurance Agency.
> 47.   The Turley Insurance Agency breached its contract with CRS Auto Parts in
>        that the Turley Insurance Agency did not feign the coverage that they had
>        advised CRS Auto had been obtained and for which CRS Auto Parts paid a
>        premium to the Turley Insurance Agency.
> 48.   The Grange Insurance Company denied coverage.
> 49.   Plaintiffs have suffered damages as a result of the breach of the agreement to
>        obtain the insurance through the Turley Agency.

(Def.'s Mot. Summ. J., Ex. 1, ¶¶ 46-49.)  Aside from the fact that the State Court Complaint makes

no mention of any explicit or implied covenant of good faith and fair dealing in the contract, it does

not allege any bad faith breach by National Grange of any specific provision of its policy with CRS.

While Plaintiff argues that the facts alleged in the State Court Complaint "establish that National

Grange and its Agents were not acting in good faith" with respect to the denial of coverage, this

Court finds nothing in that State Court Complaint that even remotely implicates National Grange in

any bad faith dealings.  (Pl.'s Opp. Mot. Summ. J. 18.)  More importantly, nothing in the State

Court Complaint puts National Grange on notice of the fifty-two separate allegations comprising

the bad faith claim in the federal Complaint.  Accordingly, we find that the common law bad faith claim was also not properly raised by the State Court Complaint.

### c.        Whether Plaintiff Could Have Amended the State Court Complaint

Alternatively, Plaintiff alleges that even if the State Court Complaint was lacking any requisite allegation for the claim of bad faith under either section 8371 or common law, "CRS would have been allowed to amend the Complaint amplifying the facts plead to rectify any alleged deficit." (Pl.'s Opp. Mot. Summ. J. 19.)  It goes on to argue that since the facts alleged in the State Court Complaint support both a contractual bad faith claim and a statutory bad faith claim, any amendment to include these causes of actions would have been permitted even if the statute of limitations had expired.  In light of the tolling provision in the Mediation Stipulation, Plaintiff claims that such "amplification" of the facts should now be permitted.

Plaintiff's argument, however, is misplaced on several grounds.  Primarily, Plaintiff again relies on federal rules regarding amendment of complaints.  As noted above, this logic disregards the fact that the State Court Complaint was filed in state court, under state court rules of pleading, and would have been amended or re-pled under state court rules of civil procedure.  The mere fact that the State Court Complaint was dismissed pursuant to the federal Mediation Agreement does not automatically convert it into a federal complaint governed by the Federal Rules of Civil Procedure.

Furthermore, under these state court rules, Plaintiff's attempt to add a bad faith cause of action would have been untimely.  The amendment of pleadings is governed by Pennsylvania Rule of Civil Procedure 1033, which states:

A party, either by filed consent of the adverse party or by leave of court, may at any

22

time change the form of action, correct the name of a party or amend his pleadings. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

PA. R. CIV. P. 1033.  "Although the right to amend is to be construed liberally, it is not absolute."

Junk v. East End Fire Dept., 396 A.2d 1269, 1277 (Pa. Super. 1978).  "[A] proposed amendment, which does not change a cause of action but merely amplifies that which has already been averred, will be permitted even though the statute of limitations has run."  Kosek v. Yetter, 74 Pa. D. & C.4th 235, 239 (2005).  Amendments may not be made, however, "if they serve to introduce a new cause of action after the running of the statute of limitations."  Junk, 396 A.2d at 1277 (citing Kuisis v. Baldwin-Lima-Hamilton Corp., 319 A.2d 914, 918 (Pa. 1974)).

The Pennsylvania Supreme Court has addressed what constitutes a new cause of action:

A cause of action does not consist of facts . . but of the unlawful violation of a right which the facts show. The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong. . . . The facts are merely the means, and not the end.  They do not constitute the cause of action, but they show its existence by making the wrong appear.

Catanese v. Taormina, 263 A.2d 372, 374 (Pa. 1970) (quotations omitted).  Thus, a new cause of action arises "if the amendment proposes a different theory or a different kind of negligence than the one previously raised or if the operative facts supporting the claim are changed."  Willett v. Evergreen Homes, Inc., 595 A.2d 164, 169 (Pa. Super.), appeal denied, 600 A.2d 539 (Pa. 1991) (quotations omitted).

As repeatedly emphasized above, the State Court Complaint, given its most liberal reading, raises nothing resembling a bad faith claim against Defendant National Grange.  It simply indicates that National Grange declined to honor the policy, not because of a bad faith effort to avoid

coverage or a lack of a reasonable basis for its coverage decision, but because it believed, correctly or incorrectly, that Turley improperly issued a binder and that Turley was not its agent.  At no point did Plaintiff challenge Defendant's refusal to acknowledge Turley as its agent, allege National Grange's reckless disregard of the binder, claim that National Grange failed to properly investigate or analyze the facts of the claim, or assert any other of the fifty-two allegations of bad faith set forth in the federal Complaint.  Given the stark absence of a bad faith allegation in the State Court Complaint, any amendment to include such a claim could not be deemed to "amplify" any facts already alleged.  Accordingly, the Court finds that an amendment to permit such a claim after the statute of limitations would have been denied.[8]

In short, the Court declines to find that National Grange raised even the semblance of a bad faith claim in its State Court Complaint.  Therefore, the Mediation Agreement, which tolled the statute of limitations for only those claims raised in that Complaint, had no bearing on the statute of limitations for the bad faith cause of action.

   4.   **Whether the Federal Complaint Alleges Ongoing Acts of Bad Faith Which Are Not Time Barred**

In a final effort to save its bad faith claim, Plaintiff contends that the Federal Complaint "alleges separate acts of bad faith that are ongoing in nature, including actions throughout the

---

   [8] To the extent Plaintiff suggests that it was prevented from filing a timely amendment to the State Court Complaint by Mediation Agreement, which called for a dismissal of the State Court Complaint, its argument is mistaken.  National Grange's denial of coverage occurred on August 26, 2003, and the State Court Complaint was filed on June 11, 2006. The Declaratory Judgment Action was not filed until July 19, 2006, well past the statute of limitations for the statutory bad faith claim.  Thereafter, the parties attended the mediation on June 2, 2008, and the State Court Complaint was dismissed on June 6, 2008, past the limitations period for the common law bad faith claim.  As such, any failure by Plaintiff to amend the State Court Complaint to include a bad faith cause of action was borne from its own missteps and not from Defendant's actions.

litigation of the Federal Declaratory Judgment Action and the instant action." (Pl.'s Opp. Mot. Summ. J. 20.) The Court finds no merit to this argument.

Plaintiff has provided a list of fifty-two different allegations of bad faith. Of these, at least thirty relate directly to the initial investigation and denial of coverage.[9] Under Pennsylvania law, as dictated by the Superior Court and reiterated by the Third Circuit, these acts constitute continuing denials of coverage and do not give rise to separate acts of bad faith that trigger the statute of limitations anew. Adamski, 738 A.2d at 1040; Sikirica, 416 F.3d at 224-25. The question then becomes whether the remaining twenty-two allegations describing actions during the pendency of both the Declaratory Judgment Action and the current litigation give rise to separate acts of bad faith, distinct from the initial denial of coverage, which started a new statute of limitations. As described by Plaintiff, these allegations include the following actions by National Grange:

> attempting to intimidate and/or coerce CRS with multiple threats of criminal prosecution, intentionally losing files and/or portions thereof and material evidence, tampering of evidence, attempting to blackmail CRS into discontinuing its claims for coverage, misrepresenting facts to CRS and the court during trial of the Declaratory Judgment Action, attempting to force litigation of a state court action filed by CRS knowing that the said action was a saving action and knowing that the parties had agreed that said State Court Action was stayed by Agreement of Counsel until the said Declaratory Judgment Action was totally resolved and attempting to require CRS to undergo unnecessary expenses in the said state court action in an effort to place economic pressure onto CRS to discontinue the said state action.

(Pl.'s Opp. Mot. Summ. J. 21.) Plaintiff asserts that these acts have occurred over the last year and are ongoing, thus precluding dismissal of the bad faith claim as time-barred.

The Pennsylvania Supreme Court has yet to speak on whether acts beyond the denial of coverage trigger a new limitations period. Accordingly, this Court is "charged with predicting how

---

[9] These allegations include the following: ¶¶ 38(d),(e),(f),(g),(h),(i),(j),(l), (p),(q)(r)(s),(u)(v),(w),(x),(y),(bb),(ee),(ff),(gg),(hh),(ii),(pp),(qq),(rr),(ss),(tt),(uu),(vv).

that court would resolve the question at issue." <u>Colliers Lanard & Axilbund v. Lloyds of London</u>, 458 F.3d 231, 236 (3d Cir. 2006).  To do so, we must consider:  "(1) what that court has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue." <u>Id.</u>  "The rulings of intermediate appellate courts must be accorded significant weight and should not be disregarded absent a persuasive indication that the highest state court would rule otherwise." <u>U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.</u>, 80 F.3d 90, 93 (3d Cir. 1996).

The Pennsylvania Superior Court, in <u>O'Donnell v. Allstate Ins. Co.</u>, 734 A.2d 901 (Pa. Super. 1999), held that bad faith is actionable regardless of whether it occurs before, during, or after litigation.  <u>Id.</u> at 906 ("[W]e refuse to hold that an insurer's duty to act in good faith ends upon the initiation of suit by the insured.").  It noted that a statutory bad faith claim was not restricted to an insurer's bad faith denial of a claim, but rather extended to an insurer's "investigative practices." <u>Id.</u>  In turn, "the conduct of an insurer during the pendency of litigation may be considered as evidence of bad faith under section 8371." <u>Id.</u> at 907.  Nonetheless, the Superior Court emphasized that insureds could not recover under the bad faith statute "for discovery abuses by an insurer or its lawyer in defending a claim predicated on its alleged prior bad faith handling of an insurance claim." <u>Id.</u> at 908 (quoting <u>Slater v. Liberty Mut. Ins. Co.</u>, Civ. A. No. 98-1711, 1999 WL 178367, at *2 n.3 (E.D. Pa. Mar. 30, 1999)).  In so reasoning, the court stated that section 8371 was "designed to provide 'a remedy for bad-faith conduct by an insurer in its capacity as an insurer and not as a legal adversary in a lawsuit filed against it by an insured.'" <u>Id.</u> at 909 (quoting <u>Slater</u>, 1999 WL 178367, at *2).

Via several recent decisions, the Third Circuit has undertaken to delineate the confines of

O'Donnell and to clarify what acts by an insurer constitute actionable bad faith.  In W.V. Realty, Inc. v. N. Ins. Co., 334 F.3d 306, 313 (3d Cir. 2003), the court noted that in those cases in which nothing more than discovery violations – or other actions calculated not toward prolonging an investigation into an insured's claim, but rather toward winning a lawsuit  – were alleged, "courts have declined to find bad faith."  Id.  "On the other hand, those cases in which courts have permitted bad faith claims to go forward based on conduct which occurred after the insured filed suit all involved something, beyond a discovery violation, suggesting that the conduct was intended to evade the insurer's obligations under the insurance contract."  Id. at 314 (citing cases).

Subsequently, in UPMC Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497 (3d Cir. 2004), the Third Circuit, relying on the Pennsylvania Supreme Court case in Terletsky v. Prudential Prop. and Cas. Ins. Co., 649 A.2d 680 (Pa. 1994), remarked that bad faith is "'any frivolous or unfounded refusal to pay proceeds of a policy,'" and that "'such conduct imports a dishonest purpose and means a breach of a known duty . . . through some motive of self-interest or ill will.'" Id. at 505 (quoting Terletsky, 649 A.2d at 688 (internal quotations omitted)).  In that regard, the court found that "[w]hile the alleged bad faith need not be limited to the literal act of denying a claim . . . the essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits."  Id. at 506 (internal citations omitted).

Notably, although these cases discussed what acts beyond the denial of coverage or improper investigation could be used as *evidence* of bad faith, none of them touched on whether acts outside the denial of coverage could trigger a separate limitations period.  To prove its current theory that a limitations period could begin with the occurrence of actions outside the denial of coverage, Plaintiff refers this Court to several cases suggesting, in dicta, that "if activity after the

initial denial of an insured's claim ("post-enabling date activity") constitutes 'separate acts of bad faith, not a continuation of a previous denial,' the insurer can be held liable for those additional acts, notwithstanding the expiration of the limitations period as to the initial denial." Romeo v. Unumprovident Corp., Civ. A. No. 07-1211, 2008 WL 375161, at *4 (E.D. Pa. Feb. 11, 2008) (quoting Rottmund v. Cont'l Ass. Co., 813 F. Supp. 1104, 1106 (E.D. Pa. 1992)).  In both of these quoted cases, however, the courts expressly avoided reaching the issue of precisely what constitutes a "separate act of bad faith" that would toll the statute of limitations.[10]  Accordingly, we find no guidance from these decisions.

Instead, this Court turns to the persuasively-reasoned decision in Precision Door Co., Inc. v. Meridian Mut. Ins. Co., Civ. A. No. 04-1194, 2005 WL 2039177 (E.D. Pa. Aug. 23, 2005).  In that case, plaintiff was a construction subcontractor insured under a commercial general liability policy issued by the defendant.  Precision Door Co., Inc. v. Meridian Mut. Ins. Co., 353 F. Supp. 2d 543, 545 (E.D. Pa. 2005).[11]  In September of 2000, plaintiff was working as a subcontractor for general contractor L.F. Driscoll and was contractually required to provide insurance coverage for Driscoll.

---

[10]  Indeed, in Rottmund, the court confronted the question of whether a plaintiff insured, who suffered a purported bad faith denial of coverage prior to section 8371's effective date, could maintain a claim under the statute where it alleged two additional acts of bad faith which occurred after the statute took effect.  813 F. Supp. at 1110-11.  Although the Court noted that the alleged actions, taken during the litigation, *could* potentially constitute bad faith as defined by the statute, it found that it had insufficient evidence to reach a conclusion as to whether the statute of limitations was tolled by the acts alleged by plaintiff.  Id. at 1111.

Likewise, the court in Romeo, while acknowledging the basic proposition in Rottmund, declined to consider whether an alleged bad faith action taken five years after the initial termination of coverage was separate from that termination and triggered a new limitations period because "plaintiff did not allege this act of bad faith in her Complaint."  Id. at *5.

[11]  The Court draws many of the facts from a summary in a previous decision in the Precision Door action, which was incorporated by reference in the August 28, 2005 decision.  Precision Door, 2005 WL 2039177, at *1, n.2.

Id.  On September 4, 2000, Thomas Naulty, an employee of plaintiff, was injured while working at the construction site governed by the contract with Driscoll.  Id. at 546.  Thereafter, Naulty filed a complaint against several companies including Driscoll ("the Naulty Action"), and Driscoll, in turn, joined plaintiff in the action.  Id.  On September 5, 2001, defendant denied coverage to plaintiff with respect to the Naulty Action.  Precision Door, 2005 WL 2039177, at *1.  In June 2003, while the Naulty Action was pending, Driscoll filed a declaratory judgment action against plaintiff and defendant, claiming that plaintiff, through its policy with defendant, was required to indemnify Driscoll.  Precision Door, 353 F. Supp. 2d at 547.  Although defendant originally hired counsel to represent plaintiff, counsel withdrew six months later and plaintiff had to hire new counsel at its own expense.  Precision Door, 2005 WL 2039177, at *6.  Following several court rulings, the Naulty Action settled.  Precision Door, 353 F. Supp. 2d at 548.  The Declaratory Judgment Action was then decided, finding in favor of Driscoll and against Defendant on one hand, and in favor of Plaintiff and against Driscoll on the other hand.  Id. at 549.

The plaintiff filed a complaint against defendant on March 19, 2004, alleging breach of contract and bad faith resulting from its denial of coverage in the Naulty Action.  Precision Door, 2005 WL 2039177, at *1.  The defendant sought dismissal of the bad faith claim as barred by the statute of limitations.  Id. at *2.  At the outset, the court noted that to the extent plaintiff could sue defendant for bad faith failure to pay the proceeds of the policy, that right existed as of defendant's failure to tender on September 5, 2001, and the statute of limitations began to run on that date.  Id. at *4.  Plaintiff then argued that even if the statute of limitations had run on the first act of bad faith, there were "additional independent factual bases for Precision Door's bad faith claim," including:

> (1) breaching its duty to defend [plaintiff] in the Declaratory Judgment [sic] action;
> (2) necessitating the filing of the Joinder Complaint in the Naulty Action; (3)

29

necessitating the filing of the Declaratory Judgment Action; (4) necessitating the
filing of this lawsuit; asserting policy limitations and exclusions as the reason(s) to
deny coverage to [plaintiff] without any basis in fact and/or in law, (5) relying on the
Employer Liability Exclusion when its own coverage supervisor admitted the
exclusion had no applicability to the claims; (6) refusing to review the PMA
competing excess insurance provision despite admitting that it could not apply the
Additional Insured Endorsement without comparing the two policies; and (7)
*misconduct during the pendency of the Naulty Action and Declaratory Judgment
Action. . . . Moreover, [defendant] continues to engage in bad faith conduct during
the course of this litigation, which provides a further basis for [plaintiff's] claim.*

Id. at *6 (emphasis added).  While the court found that the first "additional" act of bad faith was

distinct from the initial denial of coverage, since it did not come to light until Defendant's separate

and subsequent refusal to defend plaintiff during the June 2003 Declaratory Judgment Action, the

remaining acts all involved the September 2001 denial of coverage in the Naulty Action.[12]  Id.

Specifically, as to the claim that defendant engaged in bad faith conduct during the course of the

current litigation, the court stated,

> The Pennsylvania Superior Court held that "the conduct of an insurer during the
> pendency of litigation may be considered as evidence of bad faith under section
> 8371."  O'Donnell v. Allstate Ins. Co., 734 A.2d 901, 907 (Pa. Super. 1999).  To the
> extent that [plaintiff] seeks to introduce bad faith conduct during the course of this
> litigation as support for its first additional act of bad faith, that evidence is
> admissible.  To the extent that [plaintiff] door seeks to amend its complaint to add a
> separate claim of bad faith, that claim is dismissed. . . . Therefore, all of the acts
> stemming from [defendant's] original denial of coverage to Driscoll are time-barred.

Id. at *7.

Following the thorough analysis and persuasive prediction of Pennsylvania law set forth in

Precision Door, this Court likewise declines to find Plaintiff's alleged "continuing acts of bad faith"

based on Defendant National Grange's conduct during the Declaratory Judgment Action and the

---

[12]  Notably, the Court found that a portion of the seventh "additional" act – misconduct
during the pendency of the Declaratory Judgment Action – was subsumed by the first
"additional" act and, thus, governed by that limitations period.  Id. at *7.

current action to constitute actions separate and distinct from the initial denial of coverage in

August 2003.  At their core, both the Declaratory Judgment Action and the current litigation stem

solely and precisely from the original denial of coverage by Defendant to Plaintiff and from the

parties efforts to determine whether that denial was proper.  As such, any alleged bad faith actions

taken by Defendant during such litigation relate directly to and are subsumed by the bad faith claim

arising from the initial denial of coverage.  Although evidence of such continuing bad faith

litigation tactics might have been admissible to prove the underlying bad faith claim were it not

time-barred, such evidence does not create a separate claim of bad faith triggering the running of a

separate statute of limitations.[13]

**5.      Conclusion as to the Bad Faith Claim**

In light of the foregoing, the Court finds that the bad faith claim is unequivocally time

barred.  Notwithstanding its contrary argument, Plaintiff first raised this claim in the federal

Complaint filed on April 28, 2008, alleging bad faith stemming from a denial of coverage in August

2003.  Under either a two or four year statute of limitations, Plaintiff's time for presenting this

---

[13]   Defendant engages in a lengthy discussion of Chief Justice Cappy's dissent in the
Pennsylvania Supreme Court decision in Hollock v. Erie Exch., 903 A.2d 1186 (Pa. 2006).  In
that dissent, Justice Cappy strongly disagreed with any extension of an insurer's duty of good
faith to litigation conduct, reasoning that "once an action has been initiated by an insured against
the insurer under the bad faith statute, the relationship has been severed and the duty of good
faith and fair dealing no longer remains.  It is only the conduct of the insurer in the processing of
the insurance claim that its relevant to the resolution of the bad faith action."  Id. at 1188-89.
Relying on that dissent, Defendant argues that the Pennsylvania Supreme Court would find that
actions taken by an insurer after the commencement of bad faith litigation can never create new
and distinct causes of action for bad faith separate and apart from the initial denial of coverage.
      As noted above, both the Pennsylvania Superior Court and numerous decisions by and
within the Third Circuit, have found, in contrast to Justice Cappy's dissent, that the duty of bad
faith can extend past the initial denial of coverage.  Given our holding in this case, however, we
need not resolve whether the Pennsylvania Supreme Court would permit a separate bad faith
cause of action based solely on acts occurring after the initial denial.

claim has expired.  None of the allegations in that claim offer a basis separate and distinct from the initial denial of coverage on which the Court can find that a new statute of limitations begins. Accordingly, we grant Defendant's Motion for Summary Judgment on this claim.

## B.   Whether Plaintiff's Fraud Claim is Barred by the Gist of the Action Doctrine

Defendant's second argument in its Motion for Summary Judgment alleges that Plaintiff's fraud claim, based on National Grange's failure to honor its obligations under the insurance policy, sounds overwhelmingly in contract.  Relying on the gist of the action doctrine, Defendant contends that any suit to recover the resulting damages must be based upon the breach of contract, and not upon tort.

In general, Pennsylvania courts are cautious about permitting tort recovery on contractual breaches.  Glazer v. Chandler, 200 A.2d 416, 418 (Pa. 1964).  In eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10 (Pa. Super. 2002), the Pennsylvania Superior Court emphasized that the "gist of the action" doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims [by] preclud[ing] plaintiffs from recasting ordinary breach of contract claims into tort claims."  Id. at 14.[14]  The simple existence of a contractual relationship between two parties does not preclude one party from bringing a tort claim against the other.  Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001).  The doctrine, however, forecloses a party's pursuit of a tort action for the mere breach of contractual duties, without any separate or independent event giving rise to the tort.  Air Prods. and Chems., Inc. v. Eaton Metal Prods. Co., 256 F. Supp. 2d 329, 340 (E.D. Pa. 2003).

_____

[14]  Although the Pennsylvania Supreme Court has not explicitly adopted the gist of the action doctrine, both the Pennsylvania Superior Court and multiple United States District Courts have predicted that it will.  Woods v. ERA Med LC, Civ. A. No. 08-2495, 2009 WL 141854, at *6 n.11 (E.D. Pa. Jan. 21, 2009) (citing cases).

"When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort." Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc., 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999). To make this determination, the court must ascertain the source of the duties allegedly breached. Sunburst Paper, LLC v. Keating Fibre Int'l., Civ. A. No. 06-3957, 2006 WL 3097771, at *2 (E.D. Pa. Oct. 30, 2006). The doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract. eToll, 811 A.2d at 19. "In other words, if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort." Sunburst Paper, 2006 WL 3097771, at *2. Whether the gist of the action doctrine applies in any particular setting is a question of law. Bohler-Uddeholm, 247 F.3d at 103.

The jurisprudence in Pennsylvania has battled with whether the gist of the action doctrine applies to a cause of action for fraud. The elements of a fraud claim under Pennsylvania law include "a misrepresentation, an intent by the maker that the recipient be induced to act, justifiable reliance by the recipient upon the misrepresentation, and damage to the recipient as the proximate result." Olkowski v. Prudential Ins. Co. of Am., 584 F. Supp. 1140, 1141 (E.D. Pa. 1984). A claim for fraudulent inducement includes an additional element, that the misrepresentation was made with the specific intent to induce another to enter into a contract when the person had no duty to enter into the contract. In Re Allegheny Int'l, 954 F.2d 167, 178 (3d Cir. 1992).

The Pennsylvania Superior Court has explicitly recognized that Pennsylvania law has "*not* carved out a categorical exception for fraud, and [has] not held that the duty to avoid fraud is always a qualitatively different duty imposed by society rather than by the contract itself." eToll, 811 A.2d at 19.  Rather, as the court explained, the cases turn on the question of whether the fraud concerned the performance of contractual duties.  Id.  "If so, then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties.  If not, then the gist of the action would be the fraud, rather than any contractual relationship between the parties."  Id. Accordingly, the gist of the action doctrine generally bars fraud claims in cases where a defendant's alleged failure to perform its duty under the contract is transformed into a claim that this failure amounts to fraud.  Asbury Auto. Group LLC v. Chrysler Ins. Co., Civ. A. No. 01-3319, 2002 WL 15925, at *3 (E.D. Pa. Jan. 7, 2002); see also Horizon Unlimited, Inc. v. Silva, Civ. A. No. 97-7430, 1998 WL 88391, at *4-5 (E.D. Pa. Feb. 26, 1998) (holding that gist of the action doctrine barred fraud and negligent misrepresentation claims premised on allegedly false statements made in promotional literature about the product when the subsequent contract disclaimed any prior representations); Factory Mkt., Inc. v. Schuller, Inc., 987 F. Supp. 387, 394-95 (E.D. Pa. 1997) (finding that gist of the action doctrine barred fraud claims against roofer who agreed and repeatedly attempted to repair a chronically leaking roof, even though he knew from the outset that it was beyond repair, as the obligation to make the roof watertight was imposed by the contract, not in tort).  Where, however, the fraud concerns an act collateral to and not interwoven with the terms of the parties' contract, such as a fraudulent inducement to enter the contract, courts have been less willing to bar the claims.  "The distinction between fraud in the inducement and fraud in the performance claims with regard to the gist of the action doctrine is crucial.  This is because fraud in

34

the inducement claims are much more likely to present cases in which a social policy against the fraud, external to the contractual obligations of the parties, exists." Air Prods. and Chems., 256 F. Supp. 2d at 341.

Even this distinction, however, does not establish a clear-cut rule.  Where the pre-contractual statements that are the basis for the fraudulent inducement claim concern specific duties that the parties later outlined in the contract, courts have repeatedly dismissed such claims as sounding in contract and, thus, barred by the gist of the action doctrine.  See, e.g., Williams v. Hilton Group, PLC, 93 Fed. Appx. 384, 386-387 (3d Cir. 2004) (concluding that where defendants induced plaintiffs into committing to buying gaming assets for a certain price on an exclusive basis while secretly marketing properties to other buyers, the gravamen of the fraud in the inducement claim sounded in contract and was barred by the gist of the action doctrine); DeLage Landen Fin. Servs., Inc. v. Barton Nelson, Inc., Civ. A. No. 08-530, 2008 WL 4791891, at *6-7 (E.D. Pa. Nov. 4, 2008) (dismissing fraudulent inducement claim where the alleged pre-contractual misrepresentations were directly addressed by the written contract); Tier1 Innovation, LLC v. Expert Tech. Group, LP, Civ. A. No. 06-4622, 2007 WL 1377664, at *4 (E.D. Pa. May 8, 2007) (dismissing allegations of fraud in the inducement and negligent misrepresentation on grounds that they were both "inextricably intertwined" with the alleged failure to perform under the contract, as the claims pertained to representations regarding party's expertise and ability to perform its duties under the agreement); Penn City Invs., Inc. v. Soltech, Civ. A. No. 01-5542, 2003 WL 22844210, at *3-5 (E.D. Pa. Nov. 25, 2003) (dismissing, on summary judgment, fraudulent inducement claim based on pre-contractual discussions regarding specific duties that were directly addressed by the written contract).

In the case at bar, Plaintiff's fraud claim, as set forth in the Complaint, consists of two skeletal paragraphs, one incorporating all of the previous paragraphs of the Complaint and one stating that "[s]ome or all of the acts and/or omissions discussed *supra*, amount to Fraud."  (Compl. ¶¶ 41-42.)  Via its brief in opposition to the Motion for Partial Summary Judgment, Plaintiff has infused this bare fraud claim with two detailed prongs.  First, it alleges that National Grange, through its agent, provided insurance cards, which its agent knew were false, that National Grange provided these cards and insurance binder with the intent that CRS would rely on them, that CRS did rely on these insurance cards and assertions that coverage was in place, and that the injury/damages were caused by the fraud and reliance.  (Pl.'s Sur-reply Br. 6.)  Second, Plaintiff identifies behavior by National Grange during litigation that purportedly amounts to fraud "including making misrepresentations to the Court, losing material evidence, denying that Turley was their agent, asserting that Turley was an agent of CRS and/or a broker, intentionally losing files or portions of files and attempting to coerce CRS with multiple threats of criminal prosecution."  (Id. at 6-7.)

As to the first prong of the fraud claim, the Court finds that it sounds entirely in contract, not in tort.[15]  In the Declaratory Judgment Action, the parties disputed whether there was an

_____

[15]  Plaintiff argues that Defendant's Motion for Partial Summary Judgment comes at an early stage in the litigation since Defendant has not answered any discovery in this date.  Courts have shown some reluctance to dismiss claims for fraud in the inducement or negligent misrepresentation early in the litigation.  See, e.g., Longview Dev. LP v. Great Atl. & Pac. Tea Co., Inc., Civ. A. No. 02-7422, 2004 WL 1622032, at *4 (E.D. Pa. Jul. 20, 2004) (noting courts' hesitation to dismiss claims for fraud in the inducement based on gist of the action doctrine early in the litigation); Little Souls, Inc. v. State Auto Mut. Ins. Co., No. 03-5722, 2004 WL 503538, at *3 (E.D. Pa. March 15, 2004) (allowing fraud claim to survive motion to dismiss even though the court conceded that after discovery the gist of the action doctrine may bar the claim); Weber Display & Packaging v. Providence Wash. Ins. Co., No. 02-7792, 2003 WL 329141, at *4 (E.D. Pa. Feb. 10, 2003) (declining to decide whether misrepresentation claim is barred by gist of action doctrine at motion to dismiss stage); Foster v. Nw. Mut. Life, Civ. A. No. 02-2211, 2002

enforceable contract between Plaintiff and Defendant.  In this Court's decision on that action, we

found that National Grange, through the actions of its agent Turley, entered into a valid and binding

insurance policy providing coverage to CRS, and that this policy was in full force and effect at the

time of the automobile accident at issue.  Nat'l Grange Mut. Ins. v. CRS Auto Parts, Inc., Civ. A.

No. 06-3174, 2007 WL 4078728, at *1-2 (E.D. Pa. Nov. 16, 2007).  Accordingly, Plaintiff and

Defendant were unequivocally parties to a contract, namely the insurance policy, and their

obligations were defined by that agreement, not by the larger social policies embodied in the law of

torts.  Stripped to its essentials, Plaintiff's fraud claim contends that "Defendant, National Grange,

intentionally, willfully, wantonly and recklessly denied the rightful insurance coverage it owed to

Plaintiff, CRS, with the intention of avoiding payment of a claim which was properly covered in an

attempt to further improve profits."  (Compl. ¶ 31.)  Because the liability that Defendant is

attempting to impose on Defendant would not exist absent a valid contract, the claim is purely

contractual.

     Plaintiff now attempts to recharacterize its fraud claim as one of fraudulent inducement,

arguing as follows:

> In CRS' Complaint, it is alleged that National Grange's Agent advised that coverage
> was bound and provided an insurance binder and insurance cards to CRS on June
> 30, 2003.  Further, it is alleged that National Grange's agent failed to acknowledge
> its obligations under its Authorized Agency Agreement (which includes obligations
> regarding preparing insurance applications, obtaining information about prospective
> insureds, dealing with applications for insurance, and events leading up to coverage.)

---

WL 31991114, at *3 (E.D. Pa. July 26, 2002) (declining to decide, without discovery, whether
gist of action doctrine barred fraud in the inducement and misrepresentation claims).  In this case,
however, much of the discovery has been conducted and many of the parties's rights have already
been determined in the State Court Action and the Declaratory Judgment Action.  Plaintiff fails
to identify for the Court what discovery may unearth that will assist in or alter a determination of
this issue.

These allegations, among others in the Complaint, address the conduct of National
Grange, via its agent, in the inducement of the insurance contract.

(Pl.'s Opp. Mot. Summ. J. 24.)

This argument, however, lacks several crucial elements required for a fraudulent

inducement claim collateral to a contract.  Primarily, aside from the fact that the Complaint does

not mention, or even hint at any type of fraudulent inducement, Plaintiff also asserts that the written

insurance policy was freely and validly entered into by both parties, thus binding Defendant to

provide coverage for the accident.  (Compl. ¶¶ 17-18, 29.)  Such averments are inconsistent with a

fraudulent inducement claim, wherein a party seeks to void a contract or suggests that a contract

does not conform to certain representations.  Whether or not Turley breached its Agency Agreement

and/or committed fraud on National Grange in so binding National Grange to coverage is irrelevant

to any alleged fraud between CRS and National Grange.

Moreover, and more importantly, a thorough review of the Complaint finds no alleged

misrepresentation made by either National Grange or its agent Turley with the specific intent to

induce Plaintiff to enter into a contract that could somehow be construed as collateral to the

contract.  Any pre-contractual statements by Turley concerned coverage duties that were later

outlined in the written insurance policy and, accordingly, were "intertwined with the subject matter

of the contract, and . . . not 'free-standing' topics which can be the subject matter of a tort claim."[16]

---

[16]  Plaintiff cites to Little Souls, Inc. v. State Auto Mut. Ins. Co.,  No. 03-5722, 2004 WL
503538, (E.D. Pa. Mar. 15, 2004) for the proposition that misrepresentations occurring both
before and after the formation of a contract, if sufficiently distinct, would not hinge on the
outcome of a breach of contract claim.  (Pl.'s Opp. Mot. Summ. J. 24.)  In that case, the plaintiff
had alleged misrepresentations made by the defendant insurance company – marketing itself as a
trustworthy and reliable company – that purportedly induced the plaintiff into purchasing their
insurance with the defendant.  Little Souls, 2004 WL 503538, at *3.  The defendant moved to
dismiss those claims as barred by the gist of the action doctrine, and the court simply recognized

Penn City, 2003 WL 22844210, at *5.  Further, any misrepresentations by National Grange alleged

in the Complaint involve National Grange's efforts to disclaim its contractual obligation of

coverage.[17]  As noted above, it is well-established that fraud claims should be dismissed "they are

either directly addressed by the contract, or so closely related to the contractual relationship, that the

dispute between the parties should be resolved by exclusive reference to contractual principles."  Id.

at *4.  Thus, the Court must conclude that the first portion of Plaintiff's fraud claim duplicates its

breach of contract action and is barred by the gist of the action doctrine.

       As to the second prong of Plaintiff's fraud count – that National Grange engaged in

inappropriate behavior during the litigation – the Court likewise finds this claim untenable.  We

noted above that a claim of fraud under Pennsylvania law requires a showing of "a

misrepresentation, an intent by the maker that the recipient be induced to act, justifiable reliance by

the recipient upon the misrepresentation, and a damage to the recipient as the proximate result."

Olkowski, 584 F. Supp. at 1141.  All of Defendant's allegedly fraudulent litigation actions

described by Plaintiff[18] either (a) do not involve any misrepresentation by Defendant to Plaintiff

---

that, at that stage in the litigation, plaintiff had pled a cause of action for fraud in the inducement
that was collateral to the contract.  Id.
       In this case, all of the alleged misrepresentations concern duties that were later embodied
in the written contract.  Plaintiff has not set forth any false statements made by either Turley or
National Grange that induced it into entering the contract, but were never included in the
contract.

       [17]  See Compl. ¶ 38(g) (denying Turley was agent); ¶ 38(h) (asserting that Turley was the
agent of CRS); ¶ 38(i) (asserting that Turley was a broker); ¶ 38(ii) (defrauding CRS of
coverage); ¶ 38(mm) (engaging in a calculated scheme in an attempt to defeat the claims of CRS
by concealing information and/or the facts).

       [18]  Specifically, Plaintiff lists these acts as "making misrepresentations to the Court,
losing material evidence, denying that Turley was their agent, asserting that Turley was an agent
of CRS and/or a broker, intentionally losing files or portions of files and attempting to coerce
CRS with multiple threats of criminal prosecution."  (Pl.'s Sur-reply Br. 7.)

intended to invoke Plaintiff's reliance, or (b) involve a misrepresentation concerning Defendant's duties under the contract.  In either event, such claims are not actionable.[19]

Given this finding, the Court declines to address Defendant's alternative arguments that the fraud claim must be dismissed either under the economic loss doctrine or because of Plaintiff's failure to plead fraud with the requisite specificity under Federal Rule of Civil Procedure 9(b).

## IV.   CONCLUSION

In light of the foregoing, the Court holds that Plaintiff's claim for bad faith, under either the statute or common law, is unequivocally time-barred by the applicable limitations period. Moreover, under the gist of the action doctrine, Plaintiff cannot maintain a claim for fraud separate and apart from the breach of contract action.  Accordingly, the Court grants summary judgment on Counts II and III of the Complaint.

---

[19]  In its Sur-reply Brief, Plaintiff makes several misplaced arguments in an effort to resuscitate its fraud claim.  First, it argues that fraud does not require a contractual relationship and, thus, a fraud claim cannot be barred by the gist of the action doctrine.  While Plaintiff is correct that fraud claims that involve acts collateral to a contract or in the absence of a contract are not barred by the gist of the action doctrine, fraud claims that effectively replicate breach of contract actions are not cognizable.

Plaintiff also contends that common law fraud against an agent is recognized as an independent cause of action.  Defendant does not dispute this proposition, but rather correctly recognizes that a fraud claim against an agent that is subsumed by a written contract may not be separately pursued.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CRS AUTO PARTS, INC.                      :
                                          :     CIVIL ACTION
                    Plaintiff,            :
                                          :
        v.                                :
                                          :
NATIONAL GRANGE MUTUAL                     :     NO.  08-2022
INSURANCE COMPANY                         :
                                          :
                    Defendant,            :
                                          :
TURLEY INSURANCE AGENCY, INC.,            :
                                          :
        Third-Party Defendant.            :

## <u>ORDER</u>

AND NOW, this *2nd* day of *February*, 2009, upon consideration of the Motion of

Defendant National Grange Mutual Insurance Company ("National Grange") for Partial Summary

Judgment (Doc. No. 27), the Response thereto of Plaintiff CRS Auto Parts, Inc. ("CRS") (Doc. No.

31), Defendant's Supplemental Memorandum of Law in Support of the Motion for Partial

Summary Judgment, (Doc. No. 35), and Plaintiff's Sur Rebuttal in Opposition to Defendant's

Motion (Doc. No. 37), it is hereby **ORDERED** that the Motion is **GRANTED**.

**JUDGMENT IS ENTERED** in favor of Defendant and against Plaintiff on Counts II and

III of the Complaint.


                                          BY THE COURT:



                                          *s/ Ronald L. Buckwalter*
                                          _____
_____         RONALD L. BUCKWALTER, S.J.